IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION No.   4:19-CV-2 |
| | ) | |
| v. | ) | |
| | ) | Judge _____ |
| FAHEED ALBAGMI | ) | |
| MANUEL AVILA | ) | |
| EBERTH CORRALES, | ) | |
| DAVID KNOX | ) | |
| and | ) | |
| ALVIN OLSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, the United States of America ("United States"), by authority of the Attorney

General of the United States and through the undersigned attorneys, acting on behalf of the

Secretary of the United States Department of the Interior ("DOI") and the National Park Service

("NPS"), files this Complaint and alleges:

## NATURE OF ACTION

1.      This is a civil action brought pursuant to the System Unit Resources Protection

Act ("SURPA"), 54 U.S.C. §§ 100721 to 100725, arising from harmful and destructive off-road

driving activities in Big Bend National Park located in West Texas ("Big Bend" or "Park") on or

about January 17-18, 2015.  The United States seeks to recover response costs and damages that

resulted from destruction or loss of, or injuries to, the Park's resources that were caused by Defendants Alvin Olson, Faheed Albagmi, Manuel Avila, Eberth Corrales, and David Knox (collectively, the "Defendants"), pursuant to Section 100722(a) of SURPA, 54 U.S.C. § 100722(a).

2.      The United States is and was at all times pertinent to this Complaint the owner of the land and other resources within Big Bend where the alleged damages occurred.

3.      On or about January 17-18, 2015, the Defendants drove at least five vehicles identifiable as Ford pickup trucks off-road within the boundaries of the Park without authorization and against the direction of visible Park signs warning that off-road vehicle use is prohibited.  As a result of the Defendants' off-road driving activities, living and non-living Park resources were destroyed, lost, or injured.  The United States has and will incur response costs and damages to resources in the Park as a result of Defendants' activities.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to the Section 100722 of SURPA, 54 U.S.C. § 100722, and 28 U.S.C. §§ 1331, 1345, and 1355.

5.      Venue is proper within this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395, because the violations complained of, and the claims asserted herein, arose in this District, and because Big Bend contains damaged federal property that is located in this District. Additionally, venue is proper in this District because one of the Defendants resides in this District and the other Defendants reside in this State.

**THE DEFENDANTS**

6.      Defendants caused the damages that are the subject of this action.  Each Defendant is a "person" within the meaning of SURPA, 54 U.S.C. §§ 100722(a) and § 100723(a).

7.      Defendant Faheed Albagmi is an individual defendant, a resident of Katy, Texas, who operated one or more Ford pickup trucks that drove off-road in Big Bend on or about January 17-18, 2015.

8.      Defendant Manuel Avila is an individual defendant, a resident of El Paso, Texas, who operated one or more Ford pickup trucks that drove off-road in Big Bend on or about January 17-18, 2015.

9.      Defendant Eberth Corrales is an individual defendant, a resident of Cypress, Texas, who operated one or more Ford pickup trucks that drove off-road in Big Bend on or about January 17-18, 2015.

10.     Defendant David Knox is an individual defendant, a resident of Dayton, Texas, who operated one or more Ford pickup trucks that drove off-road in Big Bend on or about January 17-18, 2015.

11.     Defendant Alvin Olson is an individual defendant, a resident of Houston, Texas, who operated one or more Ford pickup trucks that drove off-road in Big Bend on or about January 17-18, 2015.

**AUTHORITY**

12.     The United States is authorized to bring this civil action at the request of the Secretary of DOI, after a finding by the Secretary of, *inter alia*, destruction, loss of, or injury to a

System unit resource, under SURPA Section 100722, 54 U.S.C. § 100722, and under the authority of 28 U.S.C. §§ 516 and 519.

## STATUTORY BACKGROUND

**SURPA**

13.     SURPA provides that "any person that destroys, causes the loss of, or injures any System unit resource is liable to the United States for response costs and damages resulting from the destruction, loss, or injury."  54 U.S.C. § 100722(a).

14.     Title 54 of the United States Code, which governs the NPS and related programs, defines a "System unit" of the National Park System as "any area of land and water administered by the Secretary [of the Interior] . . . for park, monument, historic, parkway, recreational, or other purposes."  *Id*. at §§ 100102 and 100501.

15.     SURPA provides that "System unit resource" means "any living or non-living resource that is located within the boundaries of a System unit" of the National Park System.  54 U.S.C. § 100721(3)(A).

16.     "Response costs" are defined in the SURPA as "the costs of actions taken by the Secretary [of the Interior] to—

(A) prevent or minimize destruction or loss of or injury to a System unit resource;

(B) abate or minimize the imminent risk of the destruction, loss, or injury; or

(C) monitor ongoing effects of incidents causing the destruction, loss, or injury."

*Id.* § 100721(2).

17.     SURPA also provides that the term "damages" includes the following:

"(A) compensation for—

4

(i)     (I) the cost of replacing, restoring, or acquiring the equivalent of a

System unit resource; and

(II) the value of any significant loss of use of a System unit

resource pending its restoration or replacement or the acquisition of an

equivalent resource; or

(ii) the value of the System unit resource if the System unit resource

cannot be replaced or restored; and

(B) the cost of a damage assessment under section 100723(b) of this title."

*Id.* § 100721(1).

## GENERAL ALLEGATIONS

**<u>Big Bend National Park</u>**

18.     On June 20, 1935, Congress established Big Bend as a National Park in the State

of Texas, passing legislation that would enable the federal government to acquire land to be

"vested in the United States … [and] set apart as a public park for the benefit and enjoyment of

the people." *Enabling Legislation for Big Bend National Park*, Pub. L. No. 35-157, 49 Stat. 393

(1935); 16 U.S.C. § 156.

19.     The enabling legislation for Big Bend directed that the Park's "administration,

protection, and development" shall be exercised under the direction of the Secretary of the

Interior.  *Id*.  Big Bend is administered under the jurisdiction of the NPS.

20.     After the passage of Big Bend's enabling legislation, the United States acquired

land from the State of Texas to form the boundaries of Big Bend, and on July 1, 1944, Big Bend

opened to visitors.

21.     The boundary of Big Bend was revised and expanded by Congress on December 29, 1980 (Pub. L. No. 96-607, 94 Stat. 3539 (1980); 16 U.S.C. § 157(c)); and again on December 22, 1987 (Pub. L. No. 100-201, 101 Stat. 1328 (1980); 16 U.S.C. § 157(d)).

22.     Today, Big Bend encompasses more than 801,000 acres.  The resources within the Park include the Rio Grande River, which forms the international boundary between Mexico and the United States, and desert and mountain environments that support rich biologic diversity, including endemic plants and animals.

23.     Big Bend contains the most representative example of the Chihuahuan Desert ecosystem in the United States.

24.     The desert environment within the Park contains "desert pavements."  Desert pavements are fragile, closely packed, and interlocking fragmented rock surfaces in arid areas that are formed over time from movement caused by wind action and water erosion.

25.     Desert pavements in Big Bend, particularly along most backcountry roads and in other remote areas, have cryptobiotic soil crusts, sometimes called "desert varnish" for their homogenous color or "living soil crusts" for their composition.  These upper layers of the desert soil contain biotic organisms and are typically formed over long periods of time.  Once developed and when left undisturbed, desert pavements directly inhibit erosion and provide a surface favorable for germination of seeds from a variety of endemic plant species, which further stabilize the desert pavement and underlying substrate.

26.     When desert pavements are disturbed by vehicles or otherwise breached, visible scarring appears in the landscape and the underlying substrate becomes susceptible to erosion, especially during heavy rains.  Scars in desert pavement acts as conduits for water, which

promotes down-cutting and lateral erosion, further destabilizing the pavement in nearby areas and the desert ecosystem.

27.     Desert ecosystems are slow to recover from scars in desert pavements, which can remain for decades or longer if not restored.

28.     The desert environment within the Park also contains sediment referred to as "soft alluvium."  Soft alluvium is loose, fine-grained soil or sediment that is made up of a variety of materials, including organic matter.  Alluvial sediment forms in water, which erodes and shapes it, before being deposited in a non-marine setting.

29.     The desert environment within the Park contains a variety of vegetation, including desert plants, such as ocotillo, acacia, leather stem and creosote, and annual flowers like the bi-colored mustard.

30.     The Park provides various authorized recreational opportunities for visitors.  The Park contains an array of physical natural resources for visitors to study and explore, including diverse geologic and paleontological resources.  The Park also provides other uses of value to visitors, including enjoyment of scenic vistas in the unique Chihuahuan Desert environment and opportunities for solitude in backcountry areas.

31.     Among other areas contained within the Park, and as pertinent to this Complaint, the NPS owns and manages the following five sites as federal property that are part of the Park, listed in Table 3, below.  The sites listed in Table 1 are collectively referred to in this Complaint as the "Five Sites:"

| Site Number | Site Name | Latitude and Longitude (in Decimal Degrees) |
|---|---|---|
| "Site 1" | River Road West | 29.054048, -103.35013383637154 |
| "Site 2" | River Road East | 29.082106, -103.20894173940218 |

| "Site 3" | Glenn Springs Road | 29.150381, -103.12094128730855 |
| "Site 4" | Hot Springs | 29.178687, -102.99890776115285 |
| "Site 5" | Carlota Tinaja | 29.281395, -103.03494708634143 |

32.    The Five Sites are all located along unpaved, primitive dirt roads that traverse remote backcountry areas of Big Bend, including Glenn Springs Road and River Road.

33.    At all times relevant to this Complaint, Big Bend has been a "System unit" within the meaning of SURPA and 54 U.S.C. §§ 100102 and 100501.

34.    At all times relevant to this Complaint, the desert pavement, soft alluvium, desert vegetation, and other living and nonliving resources within Big Bend are each a "System unit resource" within the meaning of SURPA, 54 U.S.C. § 100721(3)(A).

**Federal Regulations Applicable to Public Use of National Park Areas**

35.    Title 36 of the Code of Federal Regulations sets forth federal regulations governing Parks, Forests, and Public Property.  More specifically, Volume 1, Chapter I, of Title 36 provides NPS regulations set forth in Parts 1-199.

36.    The stated purpose of the regulations codified at 36 C.F.R. Parts 1-199 is to "provide for the proper use, management, government, and protection of persons, property, and natural and cultural resources within areas under the jurisdiction of the National Park Service." 36 C.F.R. § 1.1(a).  Additionally, these regulations are designed "to fulfill the statutory purposes of units of the National Park System: to conserve scenery, natural and historic objects, and wildlife, and to provide for the enjoyment of those resources in a manner that will leave them unimpaired for the enjoyment of future generations."  *Id*. at § 1.1(b).

37.     The regulations codified at 36 C.F.R. Parts 1-199 apply to "all persons entering, using, visiting, or otherwise within: (1) [t]he boundaries of federally owned lands and waters administered by the National Park Service . . . ."

38.     Pursuant to 36 C.F.R. § 1.5(a), the superintendent of any National Park within the National Park System may, *inter alia*: "(1) [e]stablish for all or a portion of a park area, a reasonable schedule of visiting hours, impose public use limits, or close all or a portion of a park area to all public use or to a specific use or activity[;]" or "(2) [d]esignate areas for specific or activity, or impose conditions or restrictions on a use or activity."

39.     Under 36 C.F.R. § 1.5(f), violating a use or activity restriction or condition or public use limit, *inter alia*, is prohibited.

40.     Under 36 C.F.R. § 1.5(e), except in emergency situations, the public must be informed of, *inter alia,* any park-related use or activity restrictions or conditions, or public use limits and public use limit procedures, in accordance with 36 C.F.R. § 1.7.

41.     36 C.F.R. § 1.7 provides a variety of methods for public notification of, *inter alia*, restricted or controlled public uses or activities within a national park, including: "[s]igns posted at conspicuous locations, such as normal points of entry and reasonable intervals along the boundary of the affected park locale . . . [m]aps available in the office of the superintendent and other places convenient to the public . . . [or] [o]ther appropriate methods, such as the . . . use of electronic media, park brochures, maps and handouts."

42.     Operating a vehicle within a National Park is subject to regulations governing vehicle and traffic safety that are codified at 36 C.F.R. Part 4.  As pertinent here, 36 C.F.R. § 4.10(a) prohibits the operation of a motor vehicle within a park "except on park roads, in parking areas and on routes and areas designated for off-road motor vehicle use."

**Defendants' Off-Road Driving in Big Bend National Park**

43.     Off-road driving by visitors in Big Bend, including in or around the Five Sites, is a prohibited use under NPS regulations applicable to National Parks.  Park visitors may only operate motor vehicles on designated park roads and in parking areas within the Park.

44.     At all times pertinent to this Complaint, signs warning Big Bend visitors that off-road vehicle travel is prohibited were located conspicuously at Park entrances and along roads within the Park.

45.     The Park's prohibition of off-road vehicle use is also stated in publically available NPS regulations at 40 C.F.R. § 4.10 and visible on webpages within the "Plan Your Visit" and "Scenic Drives" sections of the Park's website.

46.     On or about January 17-18, 2015, the Defendants visited Big Bend by entering the Park at established entrances.  Upon entry to the Park, Defendants traveled on Park roads with visible signage prohibiting off-road vehicle use.  Subject to a reasonable opportunity for further investigation or discovery, Defendants traveled together within the Park and traveled with a larger group of trucks.

47.     During their visit alleged above in Paragraph 46, Defendants traveled on remote backcountry roads within the Park, including Glenn Springs Road and River Road, and traveled off-road with their trucks within one or more of the Five Sites.

48.     During the weekend of January 17-18, 2015, an NPS volunteer assigned to work in the backcountry area of the Park that encompasses the Five Sites, along with Park visitors, reported to NPS Park Rangers the presence of multiple Ford pickup trucks traveling together in Park areas including around one or more of the Five Sites.

49.     On January 19, 2015, an NPS Park Ranger working in Big Bend was contacted by the backcountry volunteer who performed duties for the NPS in and around the Five Sites, among other areas.  The NPS volunteer reported her discovery of off-road vehicle tire tracks in one or more of the Five Sites while performing her duties that day.

50.     The NPS volunteer had previously visited one or more of the Five Sites on January 16, 2015, while performing similar duties, and did not observe the off-road vehicle tire tracks or other disturbances to the areas during her prior visit.

51.     On or about January 17, 2015, the NPS volunteer observed a Ford pickup truck driving off-road at Site 4 and she approached the driver to stop the prohibited activity.  Subject to reasonable opportunity for further investigation or discovery, this truck was driven by Defendant Olson and there was at least one other Ford Pickup in the vicinity of the Site, though no other truck was observed in an off-road area.  The NPS volunteer informed one or more of the drivers, including Defendant Olson, that off-road vehicle use was prohibited in the Park.

52.     Between January 17, 2015, and February 7, 2015, NPS Rangers conducted investigations and concluded that Defendants and their vehicles were present within the Park on or about January 17-18, 2015, in off-road areas within Big Bend at one or more of the Five Sites.

53.     On or about February 6-7, 2015, or March 10, 2015, each of the Defendants was interviewed by an NPS Park Ranger and admitted that he had driven in off-road areas in one or more of the Five Sites within Big Bend on or about January 17-18, 2015.

54.     Based on NPS investigations, during Defendants' visit to Big Bend alleged above in Paragraphs 46-47, Defendants drove their trucks into off-road areas at one or more of the Five Sites listed above in Paragraph 31, Table 1.

55.     Based on NPS investigations, Defendant Albagmi drove a truck in off-road areas within, at least, Sites 2 and 5.

56.     Subject to a reasonable opportunity for further investigation or discovery, Defendant Albagmi also drove a truck off-road at one or more other Sites that are subject of this Complaint.

57.     Based on NPS investigations, Defendant Avilla drove a truck in off-road areas within, at least, Sites 2 and 5.

58.     Subject to a reasonable opportunity for further investigation and or discovery, Defendant Avila also drove a truck off-road at one or more other Sites that are subject of this Complaint.

59.     Based on NPS investigations, Defendant Corrales drove a truck in off-road areas within, at least, Sites 2 and 5.

60.     Subject to a reasonable opportunity for further investigation or discovery, Defendant Corrales also drove a truck off-road at one or more other Sites that are subject of this Complaint.

61.     Based on NPS investigations, Defendant Knox drove a truck in off-road areas within, at least, Site 5.

62.     Subject to a reasonable opportunity for further investigation or discovery, Defendant Knox also drove a truck off-road at one or more other Sites that are subject of this Complaint.

63.     Based on NPS investigations, Defendant Olson drove a truck in off-road areas within, at least, Sites 2 and 4.

64.     Subject to a reasonable opportunity for further investigation or discovery, Defendant Olson also drove a truck off-road at one or more other Sites that are subject of this Complaint, including Sites 1 and 3.

65.     Subject to a reasonable opportunity for further investigation or discovery, one Defendant drove off-road at Site 1, as alleged above in Paragraphs 54-64, using a single area for ingress to the off-road area, traveling along a single corridor, making a "K-turn," and then retracing the travel corridor to egress back to the primitive road.

66.     Subject to a reasonable opportunity for further investigation or discovery, the Defendants who drove off-road at Site 2, as alleged above in Paragraphs 54-64, traveled with other trucks over certain off-road areas to park in a line of trucks approximately 150 feet away from the nearest road.  These Defendants drove into and out of the off-road area by veering off of the nearby road in up to three distinct places.  The Defendants who drove off-road at Site 2 made hard turns, "K-turns," wheel turns, and forward and backward movements to park near one another.

67.     Subject to a reasonable opportunity for further investigation or discovery, one Defendant drove off-road at Site 3, as alleged above in Paragraphs 54-64, traveling a short distance and making a "K-turn."

68.     Subject to a reasonable opportunity for further investigation or discovery, one or more Defendants drove off-road at Site 4, as alleged above in Paragraphs 54-64.

69.     Subject to a reasonable opportunity for further investigation or discovery, Defendants who drove off-road at Site 5, as alleged above in Paragraphs 54-64, traveled among a larger group of trucks and parked in a dry riverbed wash, crossing a man-made stone barrier that

NPS staff had assembled between the primitive road and the off-road wash area to separate the two.

**Damage to Big Bend National Park and NPS Response Actions**

70.     Defendants' off-road driving within one or more of the Five Sites during their visit to Big Bend, as alleged above in Paragraphs 46-69, resulted in visible scarring to desert pavement and the soft alluvium at Sites 1, 2, and 3, and caused other damages or other impacts to other living and non-living resources within one or more of the Five Sites.

71.     The visible scarring described above in Paragraph 70 is consistent with, in width and other man-made patterns, tire tracks made by one or more vehicles.

72.     Beginning on January 19, 2015, and continuing on several occasions thereafter, Park Rangers and other NPS staff began visiting each of the Five Sites to assess damages at the Sites, to take actions to prevent or minimize the destruction or loss of or injury to resources at the Sites, and to monitor the ongoing effects of the incidents causing the destruction, loss, or injury at the Sites.  Additional response actions or damage assessments at the Five Sites may occur after the date of this Complaint.

73.     On January 20, 2015, an NPS pilot conducted a fly-over of the Park area encompassing the Five Sites and took photographs of off-road tire tracks visible from the sky at one or more of the Five Sites.

74.     Satellite images of Sites 1, 2, and 3, obtained by the NPS after January 19, 2015, displayed visible scarring consistent with off-road tire tracks at those Sites.

75.     The NPS response actions and damage assessment at the River Road West Site (Site 1) alleged above in Paragraph 72 revealed the presence of tire tracks in the desert pavement and soft alluvium, displaced rocks, and injury to the berm area that borders the permitted road

area and separates it from the off-road area.  The tracks suggest nearby, though separate, points

of off-road ingress and off-road egress, movement consistent with hard turns and "K-turns," and

furrows at least one inch deep.

76.     As a result of the damage assessment of Site 1, the NPS calculated that there were

826 linear feet of tire tracks and an overall impacted area of 669 square feet within Site 1.  Based

on the damage assessed, the NPS determined that system unit resources in Site 1 required active

restoration (restoration requiring human intervention) to occur along with passive restoration

(restoration occurring naturally in the environment without human intervention), including

actions to prevent or minimize destruction or loss of or injury to Site 1 and actions to monitor

ongoing effects of causal incidents.

77.     Restoration of Site 1 is ongoing as of the date of this Complaint.

78.     Subject to reasonable opportunity for further investigation or discovery, at least

Defendant Olson caused the damage assessed at Site 1 and caused response costs to be incurred

by the United States.

79.     The NPS response actions and damage assessment at the River Road East Site

(Site 2) alleged above in Paragraph 72 revealed the most significant damages of any of the Five

Sites.  Site 2 had significant tire tracks in the desert pavement and soft alluvium, displaced rocks,

damaged vegetation, including the destruction of or injury to numerous plants and hundreds of

annual flowers, and visible disruption around the road edges traveled for ingress and egress to

and from the off-road area.  The tracks were concentrated around an area approximately 150 feet

away from the road and were consistent with hard turns, "K-turns," and wheel turns creating

furrows at least one inch deep.

80.     As a result of the damage assessment of Site 2, the NPS calculated that there were 1,319 linear feet of tire tracks and an overall impacted area of 1,695 square feet within Site 2. Based on the damages assessed, the NPS determined that system unit resources in Site 2 required active restoration to occur along with passive restoration, including actions to prevent or minimize destruction or loss of or injury to Site 2 and actions to monitor ongoing effects of causal incidents.

81.     Restoration of Site 2 is ongoing as of the date of this Complaint.

82.     At least Defendants Olson, Albagmi, Avila, and Corrales caused the damages assessed at Site 2 and caused response costs to be incurred by the United States.

83.     The NPS response actions and damage assessment at the Glenn Springs Road Site (Site 3) alleged above in Paragraph 72 revealed the presence of tire tracks in the desert pavement, short tire furrows, and tracks consistent with a "K-turn" in an off-road area a short distance from the primitive road.

84.     As a result of the damage assessment of Site 3, the NPS calculated that there were 89 linear feet of tire tracks and an overall impacted area of 78 square feet within Site 3.  Based on the damages assessed, the NPS determined that system unit resources in Site 3 required some active restoration to occur along with passive restoration, including actions to prevent or minimize destruction or loss of or injury to Site 3 and actions to monitor ongoing effects of causal incidents.

85.     Restoration of Site 3 ongoing as of the date of this Complaint.

86.     Subject to reasonable opportunity for further investigation or discovery, at least Defendant Olson caused the damages assessed at Site 3 and caused response costs to be incurred by the United States.

87.     The damage assessments at the Hot Springs Site (Site 4) and the Carlota Tinaja Site (Site 5) alleged above in Paragraph 72 did not reveal injuries of significance that would require active restoration.

88.     As a result of the damage assessments of Site 4 and Site 5, the NPS determined that system unit resources in Site 4 and Site 5 did not require active restoration, but the NPS will continue to assess passive restoration and monitor any ongoing effects from the incidents.

89.     Subject to reasonable opportunity for further investigation or discovery, at least Defendant Alvin Olson drove off-road in Site 4 and caused damages (including assessment costs) and response costs to be incurred by the United States.

90.     At least Defendants Albagmi, Avila, Corrales, and Knox drove off-road in Site 5 and caused damages (including assessment costs) and response costs to be incurred by the United States.

## CLAIM FOR RELIEF
## (SYSTEM UNIT RESOURCES PROTECTION ACT)

91.     The allegations in Paragraphs 1 through 90 are re-alleged and incorporated herein by reference.

92.     Defendants' off-road driving at one or more of the Five Sites during their visit to Big Bend, as alleged above in Paragraphs 46-69, caused the destruction or loss of or injury to "System unit resources" within the boundaries of Big Bend, including but not limited to the following resources: desert pavement, soft alluvium, plants, annual flowers, other vegetation, and other living and non-living resources.

93.     At times relevant to this Complaint, NPS park rangers, federal law enforcement officers, and other employees of the United States took action to prevent or minimize destruction of, loss of, and/or injury to System unit resources that resulted from Defendants' activities

alleged above in Paragraphs 46-69, including but not limited to response actions described in Paragraphs 70-90.

94.     At times relevant to this Complaint, NPS park rangers and other employees of the United States took action to assess the extent of, and to monitor the ongoing effects of, the destruction, loss, or injury to System unit resources that resulted from Defendants' activities alleged above in Paragraphs 46-69.

95.     At all times relevant to this Complaint the United States incurred and will continue to incur damage assessment costs to address damages at the Five Sites.

96.     At times relevant to this Complaint, the United States incurred and will continue to incur the following damages because of the off-road driving that occurred on or about January 17-18, 2015: the costs of replacing, restoring, or acquiring the equivalent of System unit resources within the Five Sites; significant losses of use of System unit resources within the Five Sites pending their restoration or replacement or the acquisition of an equivalent resource; and the value of lost use of Park System unit resources that cannot be replaced or restored.

97.     As of the date of this Complaint, the total response costs and damage assessment costs incurred by and unreimbursed to the United States, as alleged above in Paragraph 95 is $10,662.

98.     As of the date of this Complaint, the total damages incurred by and unreimbursed to the United States, as alleged above in Paragraph 96, is $52,451.

99.     Defendants' off-road driving activities alleged above in Paragraphs 46-69 caused injury to the Five Sites and caused the United States to incur "response costs" and "damages" (including assessment costs) as those terms are defined by SURPA, 54 U.S.C. § 100721.

100.    Each of the Defendants are persons that destroyed, caused the loss of, or injured System unit resources within Big Bend.

101.    Pursuant to SURPA, 54 U.S.C. § 100722(a), each of the Defendants that destroyed, caused the loss of, or injured System unit resources at a Site, as alleged above in Paragraphs 46-69, is jointly and severally liable for the damages and response costs incurred by the United States as a result of Defendants' activities relating to that Site.

### PRAYER FOR RELIEF

WHEREFORE, the United States requests that this Court:

A.    Enter judgment in favor of the United States and against Defendants for the response costs and damages that the United States incurred in accordance with SURPA, 54 U.S.C. §§ 100721 to 100725; and

B.    Order such other relief as this Court may deem just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

KAREN DWORKIN
Deputy Assistant Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

/s/ Robyn E. Hanson
ROBYN E. HANSON
Trial Attorney, NY Bar # 4462339
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, CO, 80202
(303) 844-1558
robyn.hanson@usdoj.gov

OF COUNSEL:

MICHAEL C. WILLIAMS
Attorney-Advisor
United States Department of the Interior
Office of the Solicitor
Southwest Regional Office
755 Parfet Street, Suite 151
Lakewood, CO 80215

## CERTIFICATE OF SERVICE

      I hereby certify that on the 15th day of January, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Faheed Albagmi
23130 Isthmus Cove Ct.
Katy, Texas, 77494-6500

Manuel Avila
1509 Finsterwald Place
El Paso, Texas, 79936-6011

Eberth Corrales
15810 Crooked Lake Way S.
Cypress, Texas, 77433-4638

David Knox
11911 Eagle Ridge Drive
Dayton, Texas, 77535-1022

Alvin Olson
2106 Briarview Drive
Houston, Texas, 77077-4326

/s/ Robyn E. Hanson

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

## DEFENDANTS

FAHEED ALBAGMI, MANUEL AVILA, EBERTH CORRALES, DAVID KNOX, and ALVIN OLSON

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Fort Bend
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robyn E. Hanson, U.S. Department of Justice, 999 18th Street, South Terrace, Suite 370, Denver, CO 80202, 303-844-1558

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                        *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☒ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
      Proceeding

☐ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      Another District
      *(specify)*

☐ 6  Multidistrict
      Litigation -
      Transfer

☐ 8  Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
System Unit Resources Protection Act, 54 U.S.C. §§ 100721-100725

Brief description of cause:
Recovery of response costs and damages resulting from off-road use of vehicles in national park.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
01/15/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ Robyn E. Hanson

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____